19234

The STATE, Respondent, v. Joey BENNETT, Appellant
(182 S. E. (2d) 291)

*John W. Williams, Jr., Esq.,* of Columbia, *for Appellant,*

*John W. Foard, Jr., Esq., Solicitor, for Respondent,*

*John W. Williams, Jr., Esq.,* of Columbia, *for Appellant, in Reply,*

June 8, 1971.

LITTLEJOHN, Justice.

The defendant, Joey Bennett, was tried and convicted by a jury of the murder of Robert Green. The jury recommended mercy and he was sentenced to life imprisonment. In this appeal error is alleged (1) in the admission in evidence of a .32 caliber pistol, (2) in failure of the trial judge to grant a change of venue, (3) in failure of the trial judge to quash the indictment because of pretrial publicity, and (4) in failure of the trial judge to conduct a bifurcated trial. We affirm.

The facts out of which the murder charge arose are as follows: On November 13, 1969 the defendant Bennett, Robert Green and Ronald Sawyer (also known as Joe Lewis) left the 1500 block of Harden Street in Columbia in Green's Chevrolet automobile to proceed to a pool hall. Green was driving, Sawyer was in the front seat with him,

and Bennett was riding in the rear seat. A few blocks away Bennett drew a gun and ordered both Green and Sawyer to hand over their wallets. He took their wallets and ordered them to drive to the Dentsville area some 7 or 8 miles away and onto a dirt road. At that place he ordered Green to stop the car, and directed both Green and Sawyer to get into the trunk of the car, where he shot them, killing Green and wounding Sawyer. Bennett closed the trunk lid and left.

Sawyer managed to open the trunk lid and ended up at the Columbia hospital, where he gave to authorities a description of Bennett. When police arrived at the car, Green was found in the trunk, dead from two .32 caliber bullet wounds.

Some two hours later, at about 12:30 A. M., a sheriff's deputy, using the description which Sawyer had given, identified Bennett walking near the scene of the crime and near his home and arrested him. He denied any knowledge of the shooting, but gave some general information including his home address, which was 1535 LeeSide Circle.

Some four hours later Lt. Laverne of the sheriff's office went before Magistrate H. G. Moore of Dentsville and obtained a search warrant for Bennett's residence, describing a .32 caliber pistol as the weapon sought.

Considerable publicity was given to the killing and to the entire happening by local news media which will be referred to hereafter. Before the trial, counsel for Bennett made motions for a change of venue and to quash the indictment because of the pretrial publicity. It was the contention of counsel that a fair trial could not be held in Richland County. Both motions were overruled. Counsel also sought a bifurcated trial, which was denied.

Bennett did not testify and did not present evidence in his own behalf. All evidence referred to is accordingly presented by the State. There is no contention but that the evidence warranted the guilty verdict by the jury.

It is first the contention of Bennett that the trial judge erred in admitting into evidence the .32 caliber pistol found in his residence and the ballistic tests and fingerprints derived from the pistol, because the pistol was the product of an illegal search and seizure under the fourth and fourteenth amendments to the United States Constitution and Article 1, Section 16 of the South Carolina Constitution.

The evidence reveals that officers proceeded to search Bennett's home and found the .32 caliber pistol which was used to fire the bullets that killed Green and wounded Sawyer. Fingerprints taken from the pistol were identified as those of the accused. All of this was admitted in evidence over the objection of counsel.

It is the contention of counsel "that the [search] warrant was defective on its face, improper, and therefore any evidence following from it is improper and should not be admitted." It is counsel's contention that the statement made in the affidavit showed merely a belief that the gun would be found at the residence of Bennett, without giving underlying facts and circumstances to justify that belief. The affidavit was as follows:

"PERSONALLY appeared before me, Lt. James H. Laverne who being sworn, says that he is informed by Joe Lewis [Sawyer] and has good cause to believe that Joey Bennett has concealed on his person, on his premises, or in his dwelling, or in a motor vehicle or other vehicle used or operated by him at or near 1535 LeeSide Circle Dentsville South Carolina One .32 Cal. pistol used in the commission of a crime.

"The facts on which such belief is based are these:

"On 11-13-69 Joe Lewis was shot in the back by Joey Bennett and left in the trunk of a 1969 chevrolet Lic. No. # EB 7434 on a dirt street near the intersection of Roof street and South Lake Marion Circle. Joe Lewis further stated that Joey Bennett also shot Robert Green with the same pistol resulting in his death. The bullet was removed

from the deceased person and indicated it was a .32 cal. bullet. It is believed that Joey Bennett carried the gun from the scene of the shooting to his home which is a trailer at the above address."

We are called upon to say whether the affidavit, considered as a whole, sets forth sufficient facts to establish a reasonable belief in the mind of the magistrate that the pistol would be found at Bennett's residence. In making this determination we consider both the constitutionally guaranteed rights of citizens to be in their homes free from molestation, and the reasonable needs of law enforcement officers to carry out their duties to apprehend suspects and present a case to the court.

> To justify issuance of a search warrant probable cause must be shown but the term "probable cause" does not import absolute certainty.

"A search warrant must be based on evidential facts. The evidence must be of sufficient weight to establish probable cause. It has been required to be such as will lead a man of prudence and caution to believe that the offense has been committed; and it must not be so meager as to constitute merely the conclusions of the applicant and an invasion of the judicial function of the magistrate. The evidence need not be sufficient to support a conviction, or a verdict of guilty, or to establish guilt beyond a reasonable doubt; nor need the proof be positive, it being enough if it is such as to induce in the mind of the issuing officer an honest belief that the facts set forth exist, or as would lead a man of prudence and caution to believe that the offense has been committed. * * * In determining whether there is sufficient evidence to sustain a finding of probable cause, each case stands on its facts." 79 C. J. S. Searches and Seizures § 74 (1952).

> Obviously, neither the affiant nor his informer could state with absolute certainty that the weapon used to kill Green was at Bennett's house, and such was

not required. Here, we do not have a case of an unidentified informer. The magistrate was made aware in the affidavit of the fact that the affiant got his information from one who was an eyewitness to the killing. The whole of the showing was sufficient to justify the magistrate in granting the request of Lt. Laverne for a search warrant to seek and seize the weapon which had been used by Bennett to kill Green.

In *United States v. Ventresca,* 380 U. S. 102, 85 S. Ct. 741, 13 L. Ed. (2d) 684 (1965) the United States Supreme Court reaffirmed the principle that searches based on warrants will be given judicial deference to the extent that an otherwise marginal search may be justified if it meets a realistic standard of probable cause. That court said:

"These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area."

We hold that the magistrate was justified in issuing the search warrant, and accordingly, the seizure of the .32 caliber pistol was not the fruit of an illegal search and seizure and was admissible in evidence.

Appellant contends next that it was prejudicial error to refuse to grant a motion for change of venue because of prejudicial pretrial publicity. The record shows that a series of four articles appeared in a local daily newspaper on November 15, 1969, November 17, 1969, December 2, 1969, and February 26, 1970. The last article appeared approximately four months before the appellant's trial in June of

1970. The sheriff's office was quoted as stating that appellant was wanted in Chicago on six armed robbery charges, and in North Carolina on a murder charge. The articles also stated that a sawed-off shotgun, "a weapon favored by professional gangland slayers," was found in appellant's trailer. If the trial had been ordered immediately thereafter, the quotation attributed to the office of the sheriff might well have been cause for a change of venue or to delay the trial of the case until its possible prejudicial effect subsided. It would be preferable hereafter that law enforcement officers refrain from the issuance of similar statements. We think, however, that the fact that the trial was held some seven months after most of the news stories, and four months after the last of the news stories, made prejudice unlikely such as to require a new trial.

The rule followed by our court in the many cases where this issue arises is that a change of venue motion rests within the sound discretion of the trial court and relief cannot be granted unless the movant can show both an abuse of discretion and resulting prejudice. *State v. Hinson,* 253 S. C. 607, 172 S. E. (2d) 548 (1970) and cases cited therein. Such has not been shown in the case at bar.

Appellant contends that it was prejudicial error to deny his motion for two trials, one on the question of guilt, and the other for determining the sentence. Such is not required by either the common law, the statutory law, or the constitution of this State. It has now been settled by the United States Supreme Court that a bifurcated trial is not required by the United States Constitution. See *McGautha v. California and Crampton v. Ohio,* 401 U. S. . . . ., 91 S. Ct. 1454, 28 L. Ed. (2d) 711 (one opinion) filed in the United States Supreme Court May 3, 1971. The contention that a bifurcated trial should be held in this State has been addressed to the trial courts and to this court on numerous occasions in recent years. We now consider the matter settled. The exception is without merit.

Exception No. 4, wherein counsel submitted that the charges should be dismissed because South Carolina has no standards by which a jury may be guided in determining whether one should suffer death or life imprisonment was not argued and accordingly, abandoned. We call to the attention of the bench and bar that this matter has now been settled by the opinion of the United States Supreme Court referred to above. Such standards are not required.

Exception No. 2, wherein appellant contended that the motion to quash the indictment should have been granted because of the pretrial publicity has, in oral argument, been abandoned.

All exceptions are found to be without merit, and the judgment of the lower court is

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, J.J., concur.