## 2140

The STATE, Respondent v. Antonnier ADOLPHE, Appellant.
(441 S.E. (2d) 832)

Court of Appeals

*Assistant Appellate Defender M. Anne Pearce, of South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Staff Atty. Rakale B. Smith,* Columbia; & *Sol. Randolph Murdaugh, III,* Hampton, *for respondent.*

Heard Dec. 8, 1993.

Decided Feb. 22, 1994.

HOWELL, Chief Judge:

Defendant Antonnier Adolphe was convicted of two counts of trafficking crack cocaine. We reverse and remand for a new trial.

Adolphe argues several issues on appeal. First, he contends the trial court erred in denying his motion to suppress evidence seized pursuant to a search warrant. Second, Adolphe asserts the trial court erred in denying his new trial motion based on the judge's granting a directed verdict to the co-defendants. Finally, he argues the trial court erred in denying his severance motion and the related new trial motion.

On the evening of October 1, 1991, through the cooperation of a confidential informant, the Beaufort County Sheriff's Department organized a controlled buy. The confidential informant, Richard "Tex" Chung, was wired at the time of the buy. When Chung arrived at the trailer·where the buy was to take place, he met a man named Michael Donnell.[1] Donnell accompanied Chung into the trailer and acted as an intermediary in the buy.

After the buy, Chung met with the officer supervising the controlled buy and turned over the crack. In addition, Chung gave them a detailed description of the man who sold the crack to him. Immediately after receiving the crack from Chung, Officer Young obtained a search warrant for the

---

[1] Donnell was unknown to the police and not assisting them at that time.

trailer.[2] Shortly thereafter, the police arrested several people in and around the trailer. Donnell was among those arrested.

From all accounts, the scene at the trailer was chaotic. The record reflects several people escaped from the trailer after the police entered. Donnell, however, was present and placed into custody. At that point, he offered to help police, stating that Adolphe had fled to Adolphe's "stash house." Donnell claimed he knew the location of the stash house.

At Donnell's direction, Donnell and the police proceeded to the alleged stash house. Upon arriving, the police entered with the consent of one of the occupants. Adolphe, attempting to exit through a back door, was arrested. He matched the description of the man who made the sale to Chung. Donnell also identified him as the one who had sold the crack at the trailer.

Minutes later, an officer arrived at the stash house with a search warrant.[3] Pursuant to the warrant, the police searched the house and seized the crack and other evidence introduced in Adolphe's trial.

Adolphe first argues the trial court erred in denying his motion to suppress evidence seized from the stash house. Adolphe contends the warrant was defective because it contained no sworn statement as to the reliability of the confidential informant nor was there any declaration of corroboration.

The affidavit stated:

> An individual, positively identified by a confidential informant, as having sold crack cocaine to the confidential informant within the last 48 hours, and being observed by drug agents fleeing the location of the previous bust, was located at this location within minutes after fleeing previous location on the night of 1-2, October, 1991. *C.I. and others* describe this residence as a "stash" house where money and drugs are stored after sale from previous location is completed.

---

[2] The validity of the search warrant issued for the trailer is not argued on appeal.

[3] Officer Young obtained a search warrant for the stash house from the same magistrate. Because of the closeness in time between the controlled buy and Adolphe's arrest, much of the information in Officer Young's sworn affidavit to secure the search warrant for the stash house was conveyed to him by police radio while he was at the magistrate's office. It is uncontroverted that both Young and the magistrate listened to the transmission.

(Emphasis added.)

The task of a magistrate when determining whether to issue a warrant is to make a practical, common sense decision as to whether, under the totality of the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place. *State v. Cliffton,* 302 S.C. 431, 396 S.E. (2d) 831 (Ct. App. 1990) (citing *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. (2d) 527 (1983)), *cert. dismissed,* 305 S.C. 85, 406 S.E. (2d) 337 (1991). This includes consideration of the veracity of the person supplying the information and the basis of his or her knowledge. *Id.* As a reviewing court, our task is to decide whether the magistrate had a substantial basis for concluding probable cause existed. *Id.*

If the affidavit standing alone is insufficient to establish probable cause it may be supplemented by sworn oral testimony before the magistrate. *State v. Johnson,* 302 S.C. 243, 395 S.E. (2d) 167 (1990). If it is unclear at trial whether the information regarding the confidential informant's reliability was furnished to the magistrate, the trial court may take testimony in an effort to supplement the facts in the affidavit of the search warrant. *Id.*

The trial court found the search warrant deficient on its face and conducted a hearing. The only testimony taken was from the affiant, Officer Young.[4] This testimony, however, did not cure the deficiencies in the search

---

[4] Officer Young's testimony, in part, was as follows.

*Examination By The Court*
Q: The affidavit, Mr. Young, says the CI, the confidential informant, and others described this residence as a stash house where money and drugs are stored. Who are the others that you refer to on that?
A: Your Honor, that's the information we received over the radio. I have no idea who they were.

\* \* \* \* \* \*

*Cross Examination*
Q: Now, the face of the affidavit on this search warrant reads,. . . . The confidential informant you're referring to there is who?
A: As having positively identified?
Q: Yes.
A: The person, the individual, that positively identified Adolphe was Michael Donnell.
Q: At the time you obtained the search warrant from the magistrate, you didn't know anything about Michael Donnell, did you?
A: No, ma'am, I didn't.

warrant. To the contrary, it only established that Donnell was the person that positively identified Adolphe. It remains unclear as to whether Donnell or Chung was the confidential informant referred to in the affidavit.

Nor does the testimony of Officer Young, together with the sworn affidavit, clear up the matter of the informant's reliability or whether or not his conclusions were corroborated. Assuming Chung was the confidential informant referenced in the affidavit, we find nothing in the record to suggest Chung was aware of the stash house or its location. On the other hand, if the confidential informant was Donnell, it is apparent the affiant had no knowledge of Donnell's reliability because Donnell was taken into custody only a short time before the warrant was issued.

Considering the totality of the circumstances, we conclude the search warrant should not have been issued because the affidavit coupled with the *Johnson* hearing failed to supply facts creating probable cause. There was no showing of the confidential informant's reliability and the informant's allegations were never corroborated by any identifiable individuals. The evidence, therefore, obtained as a result of the search warrant was inadmissible at Adolphe's trial.

The State argues the facts of this case fall within the good faith exception adopted in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed. (2d) 677 (1984). We reject this argument.

In *Johnson*, as here, the affidavit did not contain any information regarding the reliability of the informant nor was there any corroboration. Our Supreme Court declined to apply the good faith exception if the underlying affidavit does not include sufficient information to allow a magistrate to determine probable cause.[5] *Johnson*, 302 S.C. at 248, 395 S.E. (2d) at 170; *see also State v. Austin*, 306 S.C. 9, 409 S.E. (2d) 811 (Ct. App. 1991) (stating the holding in *Johnson*). In addition, the Court stated that, absent a finding by the trial court

---

[5] The dispositive issue in determining the applicability of the good-faith exception in *Johnson* was "whether sufficient information was given to the magistrate to perform his 'neutral and detached' function rather than serve as a 'rubber stamp for the police.' " *Johnson*, 302 S.C. at 248, 395 S.E. (2d) at 170.

on remand of sufficient oral testimony to cure the affidavit, the defendant was entitled to a new trial and the evidence seized pursuant to the warrant must be suppressed. *Johnson*, 302 S.C. at 248, 395 S.E. (2d) at 170.

Having concluded the affidavit in this case is defective on its face and having determined the testimony of Officer Young is not sufficient to cure the defect, we find the good-faith exception inapplicable.

Because of our disposition on the above issue, we need not address appellant's remaining arguments.

Reversed and remanded.

CURETON and GOOLSBY, JJ., concur.