## 2350

The STATE, Respondent v. Allen C. ARNOLD, Appellant.

(460 S.E. (2d) 403)

Court of Appeals

*Kathryne Ann Shelton*, Columbia, *for appellant.*

*Attorney Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Senior Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Asst. Atty. Gen. Miller W. Shealy, Jr.;* and *Sol. Richard A. Harpootlian,* Columbia, *for respondent.*

Heard Mar. 7, 1995.

Decided May 30, 1995; Reh. Den. Aug. 22, 1995.

*Per Curiam:*

Allen C. Arnold was convicted of second-degree burglary, grand larceny and attempted safecracking. On appeal, he challenges the validity to two search warrants, and the trial court's failure to suppress all evidence deriving from the warrants. We affirm.

On May 1, 1992, Officer Rocky Senn submitted the following affidavit to the magistrate in support of the first search warrant issued in this case:

> That on 4-17-92, during the early morning hours Kinko's Copies located at 7359 Two Notch was burglarized and the items sought were stolen. On 4-8-92, an employee of Kinko's was held responsible for a shortage of $200 in the business' cash register. This ex-employee is John G. Harris. On 4-15-92 during business hours around closing four subject came into the business and caused damage to the ceiling and toilet in the public restroom. This damage was made in an attempt to gain entry to the adjacent office

where a safe is kept and possibly to plan the subsequent burglary. An employee identified one of these subjects as "Mike" Arnold, a friend of John Harris. The employee also told investigators that these subjects were operating a white Pontiac Trans Am. On 4-17-92, at 2:07 A.M., Shoney's Manager at 7371 Two Notch reported a suspicious car and white male park in his lot and run through a wooded area. Deputies responded and identified the vehicle as a 1988 Pontiac Trans Am, white in color, S.C. Tag-YFS 120. The male subject was not located. The vehicle is registered to Lisa Baker of 1704 Morninglo. This address is the residence of Allen Arnold's parents. During the investigation the affiant learned that Lisa Baker and Allen C. Arnold share the apartment to be search[ed]. Additionally, the white Trans Am has been observed parked at the location to be searched. Due to the totality of the circumstances investigators believe the property is at the location to be searched.

Based on the above affidavit, the magistrate issued a search warrant for Apt. 715 Winsor Plantation Apartments. The warrant was executed the same day. The police officers found property owned by Kinko's in the apartment occupied by appellant.

As a direct result of the first search, other co-defendants of Appellant were identified and questioned. This led to the issuance of a second search warrant for appellant's apartment. Specifically, law enforcement officials were searching for two walkie-talkies and a torch allegedly used in the commission of the burglary at Kinko's.[1] The second warrant was issued on May 6, 1992, and the walkie-talkies and torch were found in appellant's apartment.

---

[1] The affidavit in support of the second warrant read as follows:

On April 17, 1992, a burglary occurred at Kinko's at 7359 Two Notch Road in Richland County. Subsequent investigation led to a search warrant being conducted on May 1, 1992 at Apartment 715, Windsor Plantation Apartments, in Richland County, the residence of one Alan Arnold, Robert Bradshaw, and Scott Eadie. Statements were subsequently taken from the three suspects concerning their involvement in the aforementioned burglaries and their relationship to a fourth suspect, one John Harris, who had been an employee of the burglarized business. These statements all were limited in the degree of culpability outlined by each

On appeal, appellant contends the evidence obtained from both search warrants should have been suppressed. He asserts (1) the trial judge erred in considering facts which were not present in the affidavit, (2) the trial judge erred in failing to suppress the evidence as to the first search warrant, as it was not supported by probable cause, and (3) the trial judge erred in failing to suppress evidence seized pursuant to the second search warrant, as the second search warrant was based on the information obtained as a result of the improperly issued warrant of May 1, 1992 and, thus, was the fruit of an illegal search.

We agree with appellant the trial judge erred in considering information which was not set forth in the affidavit and for which there is no indication it was presented to the magistrate in any other form.[2] A search warrant may issue only upon a finding of probable cause, and in passing on the validity of the warrant, a reviewing court may consider only information brought to the magistrate's attention. *State v. Owen,* 275 S.C. 586, 274 S.E. (2d) 510 (1981). Although the trial judge considered very little additional information in making his determination, it was error to consider any supplemental information not presented before the magistrate.

---

suspect. However, on May 5, 1992, a fifth suspect who had been earlier identified was arrested. The fifth suspect provided a full confession to the Kinko's burglary. This confession fully implicated the other four aforementioned suspects. During said statement, the fifth suspect spoke of a pair of walkie-talkies used during commission of the burglary, as well as a torch which was supposedly to be used to assist in effecting entry to the business. During the search done on May 1, 1992, the affiant observed that there were two walkie-talkies in Eadie's and Bradshaw's bedroom; however, at that time, the investigation hadn't proven that they could be evidence in the case. Based on the statements since taken, the affiant feels that the walkie-talkies are evidence, and their seizure is essential to corroboration of the co-defendant's statement. The affiant feels that the walkie-talkies, as well as the torch, will be at the residence to be searched. This belief is based on the totality of circumstances outlined within this affidavit.

[2] If the affidavit standing alone is insufficient to establish probable cause, it may be supplemented by sworn oral testimony before the magistrate. *State v. Adolphe,* 314 S.C. 89, 441 S.E. (2d) 832 (Ct. App. 1994). There is no evidence in the record as to whether additional sworn oral testimony was furnished to the magistrate.

However, we find the affidavit standing alone set forth sufficient information to support a finding of probable cause.[3] The task of a magistrate when determining whether to issue a warrant is to make a practical, common sense decision as to whether, under the totality of the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place. *State v. Williams*, 297 S.C. 404, 377 S.E. (2d) 308 (1989). Affidavits are not meticulously drawn by lawyers, but are normally drafted by nonlawyers in the haste of a criminal investigation, and should therefore be viewed in a common sense and realistic fashion. *State v. Sullivan*, 267 S.C. 610, 230 S.E. (2d) 621 (1976). As a reviewing court, our task is to decide whether the magistrate had a substantial basis for concluding probable cause existed. *State v. Adophe*, 314 S.C. 89, 441 S.E. (2d) 832 (Ct. App. 1994). The term "probable cause" does not import absolute certainty. *State v. Bennett*, 256 S.C. 234, 182 S.E. (2d) 291 (1971), *cert denied*, 405 U.S. 924, 92 S.Ct. 965, 30 L.Ed. (2d) 795 (1972). Rather, in determining whether a search warrant should be issued, magistrates are concerned with probabilities and not certainties. *State v. Sullivan*, 267 S.C. 610, 230 S.E. (2d) 621 (1976). Searches based on warrants will be given judicial deference to the extent that an otherwise marginal search may be justified if it meets a realistic standard of probable cause. *State v. Bennett*, 256 S.C. 234, 182 S.E. (2d) 291 (1971).

We find, under the totality of the circumstances, the magistrate made a practical, common sense decision that a fair probability existed that evidence of a crime would be found at Apt. 715 Winsor Plantation Apartments. The affidavit established that, on the same date as the Kinko's burglary, during the early morning hours, a white Trans Am pulled into an establishment in close proximity of Kinko's, and a white male exited the automobile and ran through a wooded area. Upon receiving a complaint from the Shoney's manager, deputies investigated and determined the car was registered to Lisa Baker. Although the registration indicated an address of 1704 Morninglo, further investigation revealed Lisa Baker

---

[3] This court may affirm upon any ground appearing in the record. Rule 220(c), SCACR.

lived with Allen Arnold, a son of the residents of 1704 Morninglo, and that the pair lived together in Apt. 715 Winsor Plantation Apartments. Additionally, this same white Trans Am was observed parked at Apt. 715. Further, a white Trans Am was operated by the subjects who possibly vandalized the Kinko's establishment on April 15, 1992, just two days prior to the burglary in question. Finally, one of the suspects in the vandalism was identified by a Kinko's employee as Mike Arnold, implying a further connection with Allen Arnold and the white Trans Am registered to the person with whom Allen Arnold lived.

We therefore find the information contained in the affidavit, viewed in a common sense and realistic fashion, provided the magistrate a substantial basis for concluding probable cause existed to search the apartment.[4] Accordingly, the conviction below is affirmed.

Affirmed.

SHAW and GOOLSBY, JJ., and HOWARD, Acting Judge, concur.

---

[4] Because appellant's final issue on the validity of the second search warrant is dependent upon a finding that the first search warrant was improperly issued, we need not reach this issue.