583 S.E.2d 437

**The STATE, Respondent,**

v.

**Leroy DUPREE, Appellant.**

No. 3657.

Court of Appeals of South Carolina.

Submitted March 26, 2003.

Decided June 30, 2003.

678

680

Katherine Carruth Link, of the South Carolina Office of Appellate Defense and of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Assistant Attorney General W. Rutledge Martin, all of Columbia; and Solicitor Warren B. Giese, of Columbia, for Respondent.

ANDERSON, J.:

Leroy Dupree was charged with trafficking in crack cocaine in an amount of ten grams or more, but less than twenty-eight grams. He waived his right to trial by jury. The circuit court judge found Dupree guilty of trafficking in crack cocaine; concluded the conviction was a second offense for enhancement purposes; and sentenced Dupree to fifteen years, plus a fine of $25,000. On appeal, Dupree asserts the judge erred in (1) failing to suppress evidence seized in a search and (2) sentencing him for a second offense of trafficking, where the enhancement was based on a prior conviction of possession with intent to distribute rather than a prior conviction of trafficking. We affirm.[1]

## FACTS/PROCEDURAL BACKGROUND

On January 19, 2001, Deputy Trinette Mullineaux, with the Richland County Sheriff's Department, appeared before the magistrate and signed an affidavit to obtain a search warrant for "crack cocaine, paraphernalia, paperwork, and other items associated with the use, storage, and distribution of crack cocaine." In the affidavit, Deputy Mullineaux revealed the "location to be searched is Bobby Dove's Trailer Park off 1711

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Percival, Lot # 10." The affidavit supporting the search warrant provided:

> Within the past (72) hours, a confidential and first time informant of the Richland County Sheriff's Department has purchased crack cocaine from the described location. The informant was searched before and after the purchase and was observed by narcotics agents while making the purchase entering and exiting the location. Based on the affiant's and other Richland County Sheriff's Departments [sic] narcotic agents experience in drug enforcement, it is known that subjects present at the scene of illegal drug distribution and/or possession commonly have drugs in their possession and also store and or transport in vehicles in their possession.

The magistrate issued the search warrant. Officers with the Sheriff's Department executed the search warrant on January 25, 2001. Sergeant Jerry Maldonado kicked the door down because it was locked. He entered the mobile home before any other officer. Immediately, Sergeant Maldonado noticed Dupree in the living room "by the couch on the left-hand side." The police discovered "some crack cocaine that was on [Dupree's] person." In addition to the crack cocaine, the officers seized over $800 in cash, a gun, and some marijuana.

Prior to trial, defense counsel moved to suppress the crack cocaine seized pursuant to the search warrant arguing that the warrant was not supported by probable cause. Counsel claimed there was "no indicia of reliability alleged in the search warrant as to [the first-time] informant's veracity or reliability" and "no corroborative investigation alleged on the face of the warrant."

At the hearing on the motion to suppress, Deputy Mullineaux testified regarding the information she presented to the magistrate on January 19, 2001. Deputy Mullineaux stated that she advised the magistrate she "had received several . . . different information sources that this particular residence was dealing narcotics." Deputy Mullineaux declared:

> What I also presented to [the magistrate] was after I'd received this information, I went with a confidential informant to this residence. Drove—had another agent stand by and I went with the confidential informant to the vehicle—to

the residence, observed the confidential informant get out of the vehicle and go to the back of his door, which he had purchased crack and turned that crack back over to me once he came back to the vehicle; that was the controlled buy that we had made to obtain this search warrant.

Deputy Mullineaux chose the particular confidential informant because he was well known to Dupree and "was able to purchase crack at this particular residence." The confidential informant accompanied Deputy Mullineaux to the location where the controlled buy occurred. The confidential informant was searched before he purchased the crack cocaine. At this time, the confidential informant had no drugs on his person. The officer watched the confidential informant get out of the vehicle and walk to the back door of the mobile home. When the confidential informant returned from the residence, he had crack cocaine in his possession and turned it over to Deputy Mullineaux.

On cross-examination of Deputy Mullineaux, the following exchange occurred:

Q: When you had prepared [the search warrant], did the magistrate ask you for sworn oral testimony or did you elicit that on your own?

A: Yes, sir, he asked me to stipulate how the buy had occurred and what information I had on this particular case.... I informed him about the control[led] buy that we made there and about the information that I had received, which is why I even attempted a controlled buy at this particular location.

Deputy Mullineaux said that she gave the same information to the magistrate that she testified to at the hearing. The judge denied Dupree's motion to suppress the crack cocaine, finding there was probable cause for the magistrate to issue the warrant.

During the trial, when the Solicitor moved to admit the crack cocaine into evidence, defense counsel made a timely objection based on the same grounds asserted at the prior hearing on the motion to suppress. The objection was over-ruled.

The judge found Dupree guilty as charged. Dupree was sentenced to fifteen years, plus a fine of $25,000.

## ISSUES

I. Did the trial court err in denying Dupree's motion to suppress the crack cocaine seized in the search of the mobile home?

II. Did the trial court err in sentencing Dupree for a second offense of trafficking where the enhancement was based on a prior conviction of possession with intent to distribute rather than a prior conviction of trafficking?

## STANDARD OF REVIEW

██ An appellate court reviewing the decision to issue a search warrant should decide whether the magistrate had a substantial basis for concluding probable cause existed. *State v. King,* 349 S.C. 142, 561 S.E.2d 640 (Ct.App.2002); *State v. Arnold,* 319 S.C. 256, 460 S.E.2d 403 (Ct.App.1995). This review, like the determination by the magistrate, is governed by the "totality of the circumstances" test. *State v. Jones,* 342 S.C. 121, 536 S.E.2d 675 (2000); *King,* 349 S.C. at 148, 561 S.E.2d at 643. The appellate court should give great deference to a magistrate's determination of probable cause. *Jones,* 342 S.C. at 126, 536 S.E.2d at 678; *State v. Dunbar,* 354 S.C. 479, 581 S.E.2d 840 (2003) (Anderson, J., dissenting); *King,* 349 S.C. at 148, 561 S.E.2d at 643.

██ Affidavits are not meticulously drawn by lawyers, but are normally drafted by non-lawyers in the haste of a criminal investigation, and should therefore be viewed in a common sense and realistic fashion. *State v. Sullivan,* 267 S.C. 610, 230 S.E.2d 621 (1976); *Arnold,* 319 S.C. at 260, 460 S.E.2d at 405. Our task is to decide whether the magistrate had a substantial basis for concluding probable cause existed. *State v. Adolphe,* 314 S.C. 89, 441 S.E.2d 832 (Ct.App.1994). The term "probable cause" does not import absolute certainty. *State v. Bennett,* 256 S.C. 234, 182 S.E.2d 291 (1971); *Arnold,* 319 S.C. at 260, 460 S.E.2d at 405. Rather, in determining whether a search warrant should be issued, magistrates are concerned with probabilities and not certainties. *Sullivan,* 267 S.C. at 617, 230 S.E.2d at 624. Searches based on warrants will be given judicial deference to the extent that an otherwise marginal search may be justified if it meets a

realistic standard of probable cause. *Bennett*, 256 S.C. at 241, 182 S.E.2d at 294; *Arnold*, 319 S.C. at 260, 460 S.E.2d at 405.

## *LAW/ANALYSIS*

## I. VALIDITY OF SEARCH WARRANT

Dupree contends the trial judge erred in denying his motion to suppress evidence obtained as a result of the search of the mobile home. Specifically, Dupree maintains the search warrant affidavit and additional information provided to the magistrate did not support a finding of probable cause because the State failed to (1) demonstrate the reliability of the confidential informant and (2) provide any specific factual detail concerning what had transpired or been observed when the informant was in the residence. We disagree.

A magistrate may issue a search warrant only upon a finding of probable cause. *State v. Tench*, 353 S.C. 531, 579 S.E.2d 314 (2003); *State v. Weston*, 329 S.C. 287, 494 S.E.2d 801 (1997); *State v. King*, 349 S.C. 142, 561 S.E.2d 640 (Ct.App.2002). "The South Carolina General Assembly has enacted a requirement that search warrants may be issued 'only upon affidavit sworn to before the magistrate . . . establishing the grounds for the warrant.'" *State v. Bellamy*, 336 S.C. 140, 143, 519 S.E.2d 347, 348 (1999) (quoting S.C.Code Ann. § 17–13–140 (1985)).

The affidavit must contain sufficient underlying facts and information upon which the magistrate may make a determination of probable cause. *State v. Philpot*, 317 S.C. 458, 454 S.E.2d 905 (Ct.App.1995). The magistrate should determine probable cause based on all of the information available to the magistrate at the time the warrant was issued. *State v. Driggers*, 322 S.C. 506, 473 S.E.2d 57 (Ct.App.1996); *State v. Bultron*, 318 S.C. 323, 457 S.E.2d 616 (Ct.App.1995). In determining the validity of the warrant, a reviewing court may consider only information brought to the magistrate's attention. *State v. Owen*, 275 S.C. 586, 274 S.E.2d 510 (1981); *State v. Martin*, 347 S.C. 522, 556 S.E.2d 706 (Ct.App.2001).

The United States Supreme Court, in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), rejected the application of a rigid two-pronged test in which an

informant's veracity and basis of knowledge were considered as separate and independent requirements to finding probable cause. *Weston,* 329 S.C. at 290, 494 S.E.2d at 802. "Instead, the Court adopted a totality of the circumstances test where veracity and basis of knowledge were relevant to, but not inflexible requirements of, a determination of probable cause." *Id.* The magistrate's task in determining whether to issue a search warrant is to make a practical, common sense decision concerning whether, under the totality of the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in the particular ,place to be searched. *Gates,* 462 U.S. at 238, 103 S.Ct. 2317; *Tench,* 353 S.C. at 534, 579 S.E.2d at 316; *Bellamy,* 336 S.C. at 143, 519 S.E.2d at 348; *King,* 349 S.C. at 150, 561 S.E.2d at 644; *see also State v. Jones,* 342 S.C. 121, 536 S.E.2d 675 (2000) (under totality of circumstances test, reviewing court considers all circumstances, including status, basis of knowledge, and veracity of informant, when determining whether or not probable cause existed to issue search warrant). Under this formula, veracity and basis of knowledge are treated "as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Gates,* 462 U.S. at 230, 103 S.Ct. 2317. These are relevant considerations in the totality of the circumstances analysis. *Bellamy,* 336 S.C. at 144, 519 S.E.2d at 349.

■■■■ A deficiency in one of the elements of veracity and reliability may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. *Gates,* 462 U.S. at 233, 103 S.Ct. 2317; *Bellamy,* 336 S.C. at 144, 519 S.E.2d at 349; *Martin,* 347 S.C. at 527–28, 556 S.E.2d at 709. The *Gates* case enunciated the following examples of the interaction of the relevant considerations:

> If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of

probable cause based on his tip. Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.

*Gates,* 462 U.S. at 233–34, 103 S.Ct. 2317 (citations omitted).

*State v. Viard,* 276 S.C. 147, 276 S.E.2d 531 (1981), although decided under the more stringent pre-*Gates* standard, is instructive. In *Viard,* a confidential informant made a controlled buy of drugs at the residence of the Viards. *Id.* at 148, 276 S.E.2d at 532. The residence was searched, pursuant to a warrant, and a quantity of drugs seized. *Id.* at 148–49, 276 S.E.2d at 532. The trial judge granted the Viards' motion to suppress the drugs, holding the affidavit supporting the search warrant did not contain information about the informant's reliability and failed to set forth sufficient underlying facts to enable the magistrate to make an independent finding of probable cause. *Id.* at 149, 276 S.E.2d at 532. The Supreme Court, applying the more strict pre-*Gates* test, reversed the trial court's grant of the Viards' motion to suppress the drugs. The Court explained:

Although reliability may be established by the informant having previously supplied accurate information, this is not the exclusive means by which credibility may be shown. Reliability can also be established by the independent verification of the information, prior to the search. *See: State v. Camargo,* 23 Ariz.App. 47, 530 P.2d 893 (1975); *State v. Bullard,* 267 N.C. 599, 148 S.E.2d 565 (1966).

Here, the warrant must be upheld not on the basis of the past credibility of the informant, but upon the independent verification of facts by the affiant. The information furnished by the informant taken as a whole in the light of all of the circumstances disclosed is reliable. Moreover, the controlled buy was evidence of the credibility and trustworthiness of the informant. *See: Camargo, supra; Tamburino v. Commonwealth,* 218 Va. 821, 241 S.E.2d 762 (1978).

Although the affidavit was inartfully drawn, a common-sense reading of it supports the magistrate's finding of probable cause. Affiant alleged his informant had been at the residence, saw drugs there within the past 72 hours, and purchased drugs during a controlled buy which field tested positive for depressants. We conclude the affidavit contained sufficient underlying facts and information upon which the magistrate made her independent determination of probable cause.

*Viard,* 276 S.C. at 150–51, 276 S.E.2d at 532.

Furthermore, the case of *United States v. Smith,* 914 F.2d 565 (4th Cir.1990), is illustrative. The Fourth Circuit Court of Appeals articulated:

Smith challenges the search of his motel room by asserting that there was a lack of probable cause. . . .

Smith attacks the conclusory nature of the affidavit, specifically asserting that the affidavit supporting the search warrant did not establish probable cause because the affiant (Lieutenant Dotson) failed to explain how the "reliable confidential informant" was indeed reliable or how he knew that the informant had observed cocaine in Room 254. This argument is manifestly without merit. The affidavit clearly states that the informant was observed entering a room with no cocaine in his possession, exiting the room, and then turning over cocaine to Dotson. Thus, it is clear that the magistrate had a " 'substantial basis for ... concluding' " that there was "a fair probability that contraband or evidence of a crime" would be found in Room 254. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (citation omitted).

*Smith,* 914 F.2d at 568.

■ An informant's controlled buy of drugs can constitute probable cause sufficient for a magistrate to issue a warrant. *See United States v. Clyburn,* 24 F.3d 613 (4th Cir.1994); *see also United States v. Cook,* 949 F.2d 289 (10th Cir.1991) (finding probable cause where informant was searched for money and drugs, was given money and seen to enter defendant's apartment, from which he exited and was searched again, revealing presence of crack cocaine and absence of money); *Langford v. State,* 332 Ark. 54, 962 S.W.2d 358 (1998)

(declaring that controlled buy established probable cause where officer searched informants to ensure they had no drugs, watched them enter and leave the home where they purchased the drugs, and then received drugs from informants); *State v. Sherlock*, 70 Haw. 271, 768 P.2d 1290 (1989) (holding affidavit was sufficient to establish probable cause where officer searched informant before and after controlled buy and watched him enter particular apartment); *State v. Toler*, 246 Kan. 269, 787 P.2d 711 (1990) (ruling judge had substantial basis for concluding probable cause existed to issue search warrant where informant was searched before controlled buy, was kept in sight until he entered defendant's residence, and immediately upon exit turned drugs over to police); *State v. Knowlton*, 489 A.2d 529 (Me.1985) (noting that controlled buy was sufficient corroboration under *Gates* even though affidavit failed to describe in explicit detail the police surveillance of informant during controlled buy); *Commonwealth v. Warren*, 418 Mass. 86, 635 N.E.2d 240, 242 (1994) (stating "[a] controlled purchase of narcotics, supervised by the police, provides probable cause to issue a search warrant"); *Commonwealth v. Hill*, 51 Mass.App.Ct. 598, 747 N.E.2d 1241, 1250 n. 9 (2001) (emphasizing that a controlled buy is "one of the most significant means of corroboration of an otherwise unverified tip."); *State v. Cavegn*, 356 N.W.2d 671 (Minn.1984) (observing that controlled buy was sufficient corroboration where informant was searched before and after going into apartment building to buy drugs); *State v. Emmi*, 160 Vt. 377, 628 A.2d 939 (1993) (recognizing that police control of drug purchase provides basis for police to conclude that informant has, in fact, obtained drugs from claimed source; fruits of controlled purchase and supervision by police of purchase help assure that judicial officer to whom application for warrant is made has information from which to make an independent determination of an informant's basis of knowledge and veracity).

In *Search and Seizure: A Treatise on the Fourth Amendment*, Wayne R. LaFave illuminates:

[A] situation in which the corroboration will suffice to show veracity is that in which the informant has not been working independently, but rather has cooperated closely with the police, as is true when the informant makes a

controlled purchase of narcotics. That is, where there is "physical proximity and active participation in the informant's intrigue" by the police, so that it is not "independent police work" which corroborates, but rather "the police corroboration is a co-ordinant and intrinsic part of the informer's operation," the risk of falsehood has been sufficiently diminished. As explained in *State v. Barrett* [132 Vt. 369, 320 A.2d 621, 625 (1974)]:

> The purpose of the search of the informer and his being escorted to the place of purchase was to eliminate both as much as possible of the hearsay aspects of the search warrant request and to reduce the reliance on "veracity" to a minimum. The magistrate had enough facts to support a finding of probable cause, and had them in a form which rendered extended evaluation of the informant's credibility unnecessary.

2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.3(f) (3d ed.1996) (footnotes omitted).

 If the controlled buy was properly conducted, it alone can provide facts sufficient to establish probable cause for a search warrant. *See Hignut v. State,* 17 Md.App. 399, 303 A.2d 173, 180 (1973) ("So long as the controls are adequate, the 'controlled buy' alone may well establish probable cause to search a suspect premises. . . ."); *Sadler v. State,* 905 S.W.2d 21 (Tex.App.1995) (determining that circumstances of controlled buy, standing alone, may be sufficient to reasonably confirm informant's information and give probable cause to issue search warrant). The Court of Appeals of Georgia, in *Davis v. State,* 256 Ga.App. 299, 568 S.E.2d 161 (2002), inculcated:

> The controlled buy supervised by law enforcement officers would alone have provided probable cause. "Even if an officer cannot provide information regarding the veracity of an informant or the basis of his knowledge, a tip may be proved reliable if portions of the tip are sufficiently corroborated." Here, officers witnessed the delivery of the cocaine and confirmed the accuracy of many of the informant's predictions concerning Davis's behavior. This "sufficiently corroborated" the informant's information and showed its reliability.

*Davis,* 568 S.E.2d at 165 (citations omitted). Where the affidavit is based in part on information provided by an informant of unknown reliability, police corroboration of details provided in the tip may establish probable cause. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *cf. State v. 192 Coin–Operated Video Game Machines,* 338 S.C. 176, 525 S.E.2d 872 (2000) (warrant based solely on information provided by confidential informant must contain information supporting credibility of informant and basis of his knowledge; however, independent verification by law enforcement officers cures any defect).

Based on the totality of the circumstances, we hold the affidavit provided the magistrate with a substantial basis for finding probable cause to search the mobile home. *State v. Weston,* 329 S.C. 287, 494 S.E.2d 801 (1997) (duty of reviewing court is simply to ensure that magistrate had substantial basis for concluding that probable cause existed). Although the affidavit provides the informant is a first-time informant, there are sufficient other indicators of the reliability of his statements. *See Gates,* 462 U.S. at 233, 103 S.Ct. 2317 (deficiency in one of elements of veracity and reliability may be compensated for, in determining overall reliability of a tip, by strong showing of basis of knowledge or by some other indicia of reliability). The information provided by the confidential informant was corroborated by the independent police investigation. The affidavit indicated that Deputy Mullineaux had conducted an independent investigation by setting up the controlled buy. Deputy Mullineaux searched the informant prior to the controlled buy at the mobile home. At this time, the informant had no drugs on his person. The officer observed the informant enter and exit the mobile home. When the informant returned, Deputy Mullineaux searched him again. At this time, the informant was in possession of crack cocaine and reported obtaining the crack cocaine in the mobile home for which the warrant was obtained. This amounts to sufficient police corroboration of an informant's information based on the controlled buy. *See United States v. Clyburn,* 24 F.3d 613 (4th Cir.1994) (clarifying that an informant's controlled buy of crack cocaine constituted probable cause for issuance of a search warrant); *United States v. Martin,* 920 F.2d 393 (6th Cir.1990) (rejecting defendant's

claim that the informant was unreliable on the ground that the informant's charges had been verified through a controlled buy of cocaine). The affidavit advised that an informant had made a controlled purchase of crack cocaine from the mobile home. The affidavit clearly states the confidential informant was observed entering the mobile home with no crack cocaine in his possession, exiting the mobile home, and then turning over the crack cocaine to Deputy Mullineaux. The controlled buy was evidence of the credibility and trustworthiness of the informant. Furthermore, when the officers executed the search warrant, they did in fact find crack cocaine.

■ In the affidavit, Deputy Mullineaux noted: "Based on the affiant's and other Richland County Sheriff's Department narcotic agents experience in drug enforcement, it is known that subjects present at the scene of illegal drug distribution and/or possession commonly have drugs in their possession. . . ." "[E]vidence of a sale of drugs supports an inference that more will be found at the place of operation." *State v. Maffeo*, 31 Wash.App. 198, 642 P.2d 404, 406 (1982) (citing 1 Wayne R. LaFave, *Search and Seizure* § 3.7 (1978); *United States v. Valenzuela*, 596 F.2d 824 (9th Cir.1979)).

Under these facts, a substantial basis existed to support the magistrate's finding of probable cause. The magistrate had ample probable cause to issue the warrant. Given all the circumstances set forth in the affidavit, there was a "fair probability" that crack cocaine would be found in the mobile home. *See Gates*, 462 U.S. at 238, 103 S.Ct. 2317. Concomitantly, the court did not err in denying Dupree's motion to suppress the crack cocaine.

We hold that if a controlled buy is properly conducted, the *controlled buy alone* can provide facts sufficient to establish probable cause for a search warrant.

## II. SENTENCE ENHANCEMENT

■ Dupree complains the circuit court judge erred in sentencing him "for a second offense of trafficking, where the enhancement was based on a prior conviction of possession with intent to distribute rather than a prior conviction of trafficking." We disagree.

The State requested the court treat the trafficking conviction as a second offense in sentencing Dupree under S.C.Code Ann. § 44–53–375(C) (2002). The State asserted "this is a second level conviction for enhancing purposes." In Virginia in 1991, Dupree pled guilty to "possession with intent to distribute a Schedule II controlled substance, to-wit, cocaine." Defense counsel asked the judge to treat this conviction as a first offense "because the prior drug conviction on which the [S]tate was relying was a conviction for possession with intent to distribute, not trafficking." Defense counsel maintained "the specific statute, the crack statute, would take precedence over any general statute." The court rejected this contention and sentenced Dupree to a term within the range provided by § 44–53–375(C) for a second trafficking offense.

### A. Statutory Authority: Sections 44–53–375(C) & 44–53–470

South Carolina Code Ann. § 44–53–375(C) (2002) provides in pertinent part:

A person who knowingly sells, manufactures, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, deliver, purchase, or bring into this State, or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of ten grams or more of ice, crank, or crack cocaine, as defined and otherwise limited in Sections 44–53–110, 44–53–210(b)(4), 44–53–210(d)(1), or 44–53–210(d)(2), is guilty of a felony which is known as "trafficking in ice, crank, or crack cocaine" and, upon conviction, must be punished as follows if the quantity involved is:

(1) ten grams or more, but less than twenty-eight grams:

(a) for a first offense, a term of imprisonment of not less than three years nor more than ten years, no part of which may be suspended nor probation granted, and a fine of twenty-five thousand dollars;

(b) for a second offense, a term of imprisonment of not less than five years nor more than thirty years, no part of which may be suspended nor probation granted, and a fine of fifty thousand dollars.

Pursuant to S.C.Code Ann. § 44–53–470 (2002), "[a]n offense is considered a second or subsequent offense, if, prior to his conviction of the offense, the offender has at any time been convicted under this article or under any State or Federal statute relating to narcotic drugs, marihuana, depressant, stimulant, or hallucinogenic drugs."

## B. Statutory Construction

██ Penal statutes are strictly construed against the State and in favor of the defendant. *State v. Morgan,* 352 S.C. 359, 574 S.E.2d 203 (Ct.App.2002); *State v. Fowler,* 322 S.C. 157, 470 S.E.2d 393 (Ct.App.1996). The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible. *State v. Baucom,* 340 S.C. 339, 531 S.E.2d 922 (2000); *City of Camden v. Brassell,* 326 S.C. 556, 486 S.E.2d 492 (Ct.App.1997). All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute. *State v. Hudson,* 336 S.C. 237, 519 S.E.2d 577 (Ct.App.1999). The determination of legislative intent is a matter of law. *City of Sumter Police Dep't v. One 1992 Blue Mazda Truck,* 330 S.C. 371, 498 S.E.2d 894 (Ct.App. 1998).

The legislature's intent should be ascertained primarily from the plain language of the statute. *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996). Words must be given their plain and ordinary meaning without resorting to subtle or forced construction which limits or expands the statute's operation. *Rowe v. Hyatt,* 321 S.C. 366, 468 S.E.2d 649 (1996); *City of Sumter Police Dep't,* 330 S.C. at 375, 498 S.E.2d at 896. When faced with an undefined statutory term, the court must interpret the term in accord with its usual and customary meaning. *Hudson,* 336 S.C. at 246, 519 S.E.2d at 581.

The terms must be construed in context and their meaning determined by looking at the other terms used in the statute. *Southern Mut. Church Ins. Co. v. South Carolina Windstorm & Hail Underwriting Ass'n,* 306 S.C. 339, 412 S.E.2d 377 (1991). Courts should consider not merely the language of the particular clause being construed, but the word and its mean-

ing in conjunction with the purpose of the whole statute and the policy of the law. *Whitner v. State*, 328 S.C. 1, 492 S.E.2d 777 (1997); *see also Stephen*, 324 S.C. at 340, 478 S.E.2d at 77 (statutory provisions should be given reasonable and practical construction consistent with purpose and policy of entire act). In interpreting a statute, the language of the statute must be construed in a sense which harmonizes with its subject matter and accords with its general purpose. *Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 420 S.E.2d 843 (1992); *Hudson*, 336 S.C. at 246, 519 S.E.2d at 582. Statutes must be read as a whole and sections which are part of the same general statutory scheme must be construed together and each given effect, if it can be done by any reasonable construction. *Higgins v. State*, 307 S.C. 446, 415 S.E.2d 799 (1992).

If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no need to employ rules of statutory interpretation and the court has no right to look for or impose another meaning. *Paschal v. State Election Comm'n*, 317 S.C. 434, 454 S.E.2d 890 (1995); *Brassell*, 326 S.C. at 560, 486 S.E.2d at 494. When the terms of a statute are clear, the court must apply those terms according to their literal meaning. *Holley v. Mount Vernon Mills, Inc.*, 312 S.C. 320, 440 S.E.2d 373 (1994). However, if the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *Hudson*, 336 S.C. at 247, 519 S.E.2d at 582. The statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers. *Brassell*, 326 S.C. at 561, 486 S.E.2d at 495. Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law. *City of Sumter Police Dep't*, 330 S.C. at 376, 498 S.E.2d at 896.

## C. "Second Offense" Category

Dupree contends that possession with intent to distribute cocaine does not qualify as a prior offense for the purpose of § 44–53–375(C)(1)(b). We disagree.

Dupree cites *Rainey v. State*, 307 S.C. 150, 414 S.E.2d 131 (1992), in support of his argument. Rainey pled guilty to distribution of crack cocaine and resisting arrest. He was

sentenced as a second offender for the distribution charge to thirty years, suspended upon the service of twenty-five years, and a payment of a $50,000 fine. Our Supreme Court affirmed the case on direct appeal. The post-conviction relief (PCR) judge granted Rainey's application for PCR. On appeal, the Supreme Court held:

Respondent was sentenced as a second offender under the crack cocaine statute[, S.C.Code Ann. § 44–53–375 (Supp. 1990),] based on his prior convictions for distribution of marijuana and possession with intent to distribute marijuana. Pursuant to § 44–53–375(B), an enhanced sentence is required for "a second offender, or if, in the case of a first conviction of a violation of this section, the offender has been convicted of any [law] ... relating to *narcotic drugs* ...." (Emphasis added). Since respondent does not have a prior crack cocaine conviction and marijuana is not a narcotic drug as defined by S.C.Code Ann. § 44–53–110 (1985), he should not have been sentenced as a second offender under § 44–53–375(B).

*Rainey,* 307 S.C. at 151, 414 S.E.2d at 132 (footnote omitted). The State asserted Rainey was a second offender under § 44–53–470. In affirming the order of the PCR judge, the Court explained:

Because there is a conflict between § 44–53–375(B) and the general second offense statute, the later, more specific crack cocaine statute must prevail. The PCR judge was correct in finding that respondent is not a second offender under § 44–53–375(B) and should not, therefore, have been sentenced as one.

*Rainey,* 307 S.C. at 152, 414 S.E.2d at 132.

Rainey is inapposite to the case at bar. The *Rainey* Court was construing the previous § 44–53–375(B). Section 44–53–375(B) permitted "second offender sentencing" in regard to a prior offense "relating to *narcotic drugs.*" *Rainey,* 307 S.C. at 151, 414 S.E.2d at 132 (emphasis in original). Marijuana is not a narcotic drug. The statute has since been amended and now reads in relevant part:

(B) A person who manufactures, distributes, dispenses, delivers, purchases, or otherwise aids, abets, attempts, or conspires to manufacture, distribute, dispense, deliver, or

purchase, or possesses with intent to distribute, dispense, or deliver ice, crank, or crack cocaine, in violation of the provisions of Section 44-53-370, is guilty of a felony and, upon conviction:

. . . .

(2) for a second offense or if, in the case of a first conviction of a violation of this section, the offender has been convicted of any of the laws of the United States or of any state, territory, or district relating to narcotic drugs, **marijuana,** depressant, stimulant, or hallucinogenic drugs, the offender must be imprisoned for not more than twenty-five years and fined not less than fifty thousand dollars.

S.C.Code Ann. 44-53-375(B)(2) (2002) (emphasis added). Section 44-53-375(C)(1)(b), the statute under which Dupree was sentenced, does *not* contain language similar to that in § 44-53-375(B), which was the focus of *Rainey.*

The case of *Thomas v. State,* 319 S.C. 471, 465 S.E.2d 350 (1995), is enlightening. Thomas was convicted of trafficking in marijuana and sentenced as a third-time offender under S.C.Code Ann. § 44-53-370(e)(1) (Supp.1994). Thomas had prior convictions for possession of marijuana with intent to distribute and distribution of marijuana. When Thomas' direct appeal was dismissed, he filed an application for PCR on the ground his sentence exceeded the maximum allowed by law. The PCR judge granted Thomas a resentencing hearing.

On appeal, the State claimed the PCR judge erred in finding the trial judge had improperly interpreted the term "subsequent or second offense." The Court noted that § 44-53-470 defines "second or subsequent offense" as "when an offender 'has at any time been convicted under this article or under any State or Federal statute relating to narcotic drugs, *marihuana,* depressant, stimulant, or hallucinogenic drugs.' " *Id.* at 472, 465 S.E.2d at 351 (emphasis in original). The Court discussed:

Respondent argues the references to second or subsequent offenses in § 44-53-370(e)(1) refer only to convictions of trafficking in marijuana, not other drug offenses. Relying on *Rainey v. State,* 307 S.C. 150, 414 S.E.2d 131 (1992), respondent contends the definition set out in § 44-53-470

does not apply to § 44–53–370(e). In *Rainey*, the defendant was convicted under the former crack cocaine statute, S.C.Code Ann. § 44–53–375. His prior offense was for marijuana. Under former § 44–53–375(B), the prior offense had to be related to narcotic drugs. However, under the definition set out in § 44–53–470, a prior offense is any drug offense. Finding a conflict between § 44–53–470 and § 44–53–375(B) and applying the rule that the more recent legislation supersedes prior law, the Court held the defendant should not have been sentenced as a second offender. Here, §§ 44–53–370(e)(1) and 44–53–470 are not in conflict. Since there is no conflict, *Rainey* does not apply.

*Thomas*, 319 S.C. at 472–73, 465 S.E.2d at 351 (footnote omitted). The Court, in a footnote, recognized that § 44–53–375(B) has been amended and now states a prior offense includes those for marijuana. In reversing the order of the PCR judge, the Court expounded:

> Here, both statutes are part of the same general law and can be read together without any conflict. *Cf. In re Keith Lamont G.*, 304 S.C. 456, 405 S.E.2d 404 (1991) (statutory sections that are part of the same general statutory law must be construed together). Further, the cardinal rule of statutory construction is that legislative intent is to prevail. *Browning v. Hartvigsen*, 307 S.C. 122, 414 S.E.2d 115 (1992). The legislature could not have intended second or subsequent offenses under § 44–53–370(e)(1) to include only the offense of marijuana trafficking when there is a specific statute which defines second or subsequent offenses as any drug offense. Therefore, we hold respondent was correctly sentenced as a third-time offender.

*Thomas*, 319 S.C. at 473, 465 S.E.2d at 352.

*Thomas v. State* is analogous to the present case. Sections 44–53–375(C)(1)(b) and 44–53–470 are not in conflict. **There is no specific enhancement language in § 44–53–375(C). It merely delineates offenses.** Because there is no conflict between these statutory sections, *Rainey* does not apply. Section 44–53–470 applies to § 44–53–375(C). The trial judge correctly sentenced Dupree as a second offender.

## CONCLUSION

Accordingly, Dupree's conviction is **AFFIRMED.**

CURETON and HUFF, JJ., concur.