579 S.E.2d 314

**The STATE, Respondent,**

v.

**Christopher Dale TENCH, Appellant.**

No. 25618.

Supreme Court of South Carolina.

Heard March 4, 2003.

Decided April 7, 2003.

Deputy Chief Attorney Joseph L. Savitz, III, Assistant Appellate Defender Eleanor Duffy Cleary, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and Solicitor Druanne Dykes White, of Anderson, for Respondent.

Justice WALLER.

Christopher Dale Tench was convicted of murder, first degree burglary, and attempted armed robbery. He was sentenced to death for murder, life imprisonment for burglary, and ten years for attempted armed robbery. We affirm.

## FACTS

In the early morning hours of January 12, 1999, police were called to a home in Anderson, SC, where they found Appellant, Christopher Dale Tench, bleeding from the torso, left hand, and both legs, the apparent victim of a shooting. Tench told police he had been shot by three men at Broadway Lake; however, he could not describe either his assailants or the exact location of the shooting. In the hopes of obtaining further information leading to the individuals who shot Tench, police sought a search warrant for his vehicle. The affidavit supporting the warrant sought "blood, fibers, weapons, projectiles, casings or papers or receipts which would indicate the manner, method, motive, cause or perpetrators involved in the shooting . . ."

The search warrant was executed at approximately 2:00 p.m. on January 12, 1999, by Investigator Clamp, one of the officers who had been called to Tench's home in the early morning hours. As Clamp was executing the warrant, he was advised by another officer that police were investigating the murder of a man named James Michael McBride, who had been found shot to death at his home the same morning. Clamp was advised that some peanut shells had been found outside McBride's residence. Accordingly, Clamp began looking for any evidence which might link the two crimes together. Clamp seized the following items from Tench's vehicle:

1 Pillow, Sample of Dirt, Peanuts, Light Switch, 1 Dime, Box of Ammo. (partial box)Reloads, assorted cans and bottles, assorted papers, 1 pair of black gloves, paint scraping, 8 trace evidence lifts, 2 blood swabs, yellow handled pliers, green colored ball cap, small black flashlight, insurance papers, 3 sheets of latent fingerprint lifts and inked impres-

sions of the tires. Also collected was small blood stained portion of the driver's seat, 1 small blue ball bat, 1 set of booster cables.

Three days later, while in the hospital being treated for his injuries, Tench confessed to shooting McBride. However, Tench claimed he had intended only to burglarize the home but was confronted by McBride when he entered the home. According to Tench, McBride started shooting at him; Tench pleaded with McBride to be allowed to leave but McBride kept shooting. Tench shot him, killing him.

Tench was subsequently indicted for murder, first-degree burglary, and armed robbery; the state sought the death penalty for murder. At trial, Tench moved to suppress all evidence seized during the search of his car on the basis that the affidavit and search warrant did not set forth sufficient probable cause for police to search for evidence linking him to McBride's murder. The court denied the motion to suppress. The jury convicted Tench on all counts and recommended a sentence of death. The trial court sentenced him to death for murder, life imprisonment for burglary, and ten years for attempted armed robbery.

## ISSUE

Did the court err in denying the motion to suppress the evidence seized in the search of Tench's automobile?

## DISCUSSION

■ Tench asserts the search warrant was unsupported by probable cause that evidence of any crime could be found in his car; accordingly, he contends the trial court erred in refusing to suppress the evidence seized therein. We disagree.

■ A search warrant may issue only upon a finding of probable cause. *State v. Weston,* 329 S.C. 287, 494 S.E.2d 801 (1997). The magistrate's task in determining whether to issue a search warrant is to make a practical, common sense decision concerning whether, under the totality of the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in the particular place to be searched. *Id.; State v. Philpot,* 317 S.C. 458, 454 S.E.2d 905 (Ct.App.1995). A reviewing court should give great deference

to a magistrate's determination of probable cause. *State v. Crane*, 296 S.C. 336, 372 S.E.2d 587 (1988).

The affidavit prepared by Investigator Major provides:

That on or about 12:39 a.m. on January 12, 1999, deputies from the Anderson County Sheriff's Office responded to shooting call at 150 Cedar Road in Anderson, S.C. On their arrival, they found Christopher Dale Tench sitting in a chair at the kitchen table bleeding from his torso, his left hand and both legs, an apparent victim of multiple gunshot wounds. Tench was able to inform the officers that he was shot near Broadway Lake. He could not, however, describe his assailant(s) nor provide a specific location of the incident. His mother, who was at the house, stated that Tench arrived home driving his white with a burgundy half top 1977 Cadillac 2–Door Coupe de Ville. He exited the vehicle wounded and bleeding. There is smeared blood on the outside handle of the driver's door. The driver's seat is blood soaked and blood can been [sic] seen on the instrument panel and steering wheel. An Anderson County deputy sheriff located and recovered an apparent projectile from the outside of the trousers worn by Tench. It is the Affiant's belief that based on these facts, items will be on or within the vehicle which will indicate the manner, method, motive, cause, or perpetrators involved in the shooting of Christopher Dale Tench.

We find the affidavit sufficiently establishes probable cause. The affidavit specifically notes that police recovered an "apparent projectile from the outside of Tench's trousers." Police were aware that Tench had driven the car home from the scene of the shooting and there was blood both in and on the car. Given that a projectile was recovered from Tench's trousers, we find police had a legitimate basis to believe that further projectiles could feasibly be found in the car. Further, in light of the fact that Tench did not give police the precise location of the shooting, the police could feasibly have believed he may have been shot at as he attempted to enter or exit the vehicle, which would have provided a sufficient basis to search for projectiles or shell casings in the vehicle. Moreover, since Tench could not pinpoint for police the exact location of the shooting, we find police had sufficient cause to obtain tire impressions, to enable them to investigate matching impressions at the alleged scene of the crime.

Finally, the affidavit authorized police to search for evidence which would indicate the "manner, method, motive, cause or perpetrators involved in the shooting of Christopher Dale Tench." Although Tench asserts police were, in reality, attempting to search for evidence linking him to the McBride murder, the simple fact of the matter is that any evidence which did link Tench to that murder also tended to indicate the manner, method, motive and perpetrator involved in shooting Tench. Accordingly, we find the affidavit established probable cause, and the trial court properly denied the motion to suppress.

■ In any event, even were we to find the affidavit insufficient to establish probable cause, we would find any error in admission of the seized evidence harmless beyond a reasonable doubt. *See State v. Davis*, 309 S.C. 326, 422 S.E.2d 133 (1992) (erroneous admission of evidence may constitute harmless error if the evidence did not affect the outcome of the trial), *overruled on other grounds by Brightman v. State*, 336 S.C. 348, 520 S.E.2d 614 (1999); *State v. Bernotas*, 277 S.C. 106, 283 S.E.2d 580 (1981) (for an error in the erroneous admission of unlawfully seized evidence to require reversal, the appellant must be sufficiently prejudiced).

Independent of the items Tench sought to have suppressed at trial,[1] the state presented overwhelming evidence of Tench's guilt, to wit: 1) Tench's confession to police in which he admitted to breaking into McBride's house and to shooting him, 2) blood found at the victim's house which matched Tench's DNA,[2] 3) the bullet from Tench's leg was consistent with the spent rounds found at the scene, 4) a shoe print found at the scene was consistent with prints of Tench's tennis shoes, and 5) some unfired .44 cartridges which police obtained from Darvin Davis, the man from whom Tench purchased a .44 caliber pistol several hours prior to the shooting.

---

1.  The specific items seized from the car which Tench objected to at trial were a sample of dirt, peanuts, a dime, a pair of black gloves, paint scraping, three sheets of latent fingerprints, and ink impressions of the tires. At oral argument before this Court, counsel for Tench conceded that, if the warrant to search was valid, then the items seized but not specifically enumerated therein were not objectionable.

2.  The investigator testified the probability of selecting an unrelated individual from a DNA match from the Caucasian population was one

Given the abundant evidence of Tench's guilt, we find any error in admission of the seized items clearly harmless beyond a reasonable doubt. *State v. Easler,* 327 S.C. 121, 489 S.E.2d 617 (1997)(failure to suppress evidence is harmless where record contains overwhelming evidence of guilt).

As this is the direct appeal of Tench's death sentence, we must conduct a proportionality review pursuant to S.C.Code Ann. § 16–3–25(C) (1985). We find the death sentence in this case is proportionate to that in similar cases and is neither excessive nor disproportionate to the crime. *See State v. Hughey,* 339 S.C. 439, 529 S.E.2d 721 (2000); *State v. Hughes,* 328 S.C. 146, 493 S.E.2d 821 (1997), *cert. denied,* 523 U.S. 1097, 118 S.Ct. 1674, 140 L.Ed.2d 798 (1998); *State v. Patterson,* 324 S.C. 5, 482 S.E.2d 760, *cert. denied,* 522 U.S. 853, 118 S.Ct. 146, 139 L.Ed.2d 92 (1997); *State v. Simpson,* 325 S.C. 37, 479 S.E.2d 57, *cert. denied,* 520 U.S. 1277, 117 S.Ct. 2460, 138 L.Ed.2d 217 (1997); *State v. Humphries,* 325 S.C. 28, 479 S.E.2d 52, *cert. denied,* 520 U.S. 1268, 117 S.Ct. 2441, 138 L.Ed.2d 201 (1997). Tench's convictions and sentences are affirmed.

**AFFIRMED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.

in 1.4 trillion and that there were only six billion people on the face of the earth.