# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Alphonso Chaves Thompson, Petitioner.

Appellate Case No. 2015-002221

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Spartanburg County
J. Derham Cole, Circuit Court Judge

---

Opinion No. 27706
Heard December 1, 2016 – Filed February 22, 2017

---

## REVERSED

---

Michael Patrick Scott, of Nexsen Pruet, LLC, and Chief
Appellate Defender Robert Michael Dudek, both of
Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Assistant
Attorney General Mark Reynolds Farthing, of Columbia,
and Solicitor Barry J. Barnette, of Spartanburg, for
Respondent.

---

**ACTING JUSTICE PLEICONES:** Petitioner Thompson was convicted of trafficking in cocaine in excess of 400 grams, possession of a weapon during the commission of a violent crime, and possession with intent to distribute ("PWID") marijuana. He was sentenced to concurrent sentences of twenty-five years' imprisonment, and two terms of five years' imprisonment, respectively.

At a pre-trial hearing, Thompson challenged the admissibility of the evidence recovered during a search conducted at his parents' home located in Spartanburg County at 120 River Street,[1] arguing the affidavit supporting the search warrant for the property was invalid. The trial judge found the affidavit was sufficient, and denied the motion to suppress the evidence. The Court of Appeals affirmed Thompson's convictions and sentences. *See State v. Thompson*, 413 S.C. 590, 776 S.E.2d 413 (Ct. App. 2015). We granted Thompson's request for a writ of certiorari to review the Court of Appeals' decision. Because we find the affidavit supporting the search warrant fails to establish a fair probability that the evidence sought would be found at 120 River Street, we hold the Court of Appeals erred in affirming the trial judge's denial of the motion to suppress the evidence recovered there.

## FACTS

Prior to trial, Thompson moved to suppress the evidence seized from 120 River Street. Thompson challenged the search warrant under the Fourth Amendment to the United States Constitution, Article I, § 10 of the South Carolina Constitution, and S.C. Code Ann. § 17-13-140 (2014). Specifically, Thompson argued the affidavit in support of the search warrant was insufficient because it: relied on information that was stale; provided information from informants without any indicia of their reliability or basis of knowledge; and offered defectively unspecific facts as to whether the evidence sought would be found at Thompson's parents' home.

The affidavit supporting the search warrant for the premises, which was provided to the issuing judge on May 13, 2010, states:

> In June of 2007 Investigators from the Spartanburg

---

[1] The trial judge ruled Thompson had standing to challenge the search conducted at his parents' home, and the State does not challenge that finding on appeal.

County Sheriff's Office[2] Narcotics Division had two different Confidential Reliable Informants (CRI) give information that they had been buying large amounts of cocaine from a black male that they only knew as "POO BEAR." These two CRI's [sic] stated that several large cocaine transactions took placed [sic] over the course of several months. These CRI's [sic] furnished information that was able to be corroborated such as vehicle descriptions and photo identifications. Both CRI's [sic] stated that they knew POO BEAR to drive a gray in color Honda Accord Station wagon when he would conduct these drug deals. It was learned through this Investigation that "POO BEAR" was positively identified as Alfonso Thompson and he also had an F350 Ford Dually [sic] blue and Gold in color. In August of 2007 the SCSO Narcotics Division arrested Keith Jeter who stated that he was being supplied 4 ½–9 oz. of cocaine at a time from Alfonzo Thompson aka "POO BEAR." Jeter further stated that "POO BEAR" would bring the cocaine to his residence on Huxley St. in Spartanburg City. In September of 2008 the SCSO Narcotics Division interviewed a [sic] individual named Fred Meadows who stated that he was being supplied cocaine from "POO BEAR" and that "POO BEAR" drove a blue and gold Ford F–350 Dually [sic]. Meadows further stated that he grew up with "POO BEAR" in the city and has known him for a long time. Meadows stated that "POO BEAR" would deliver the cocaine to his house on Virginia St. in the city of Spartanburg. Also in late 2008 Spartanburg City Police Narcotics had an informant who came forward and stated the [sic] "POO BEAR" had a residence at the end of River St. on the left hand side and that "POO BEAR" was a large scale cocaine Trafficker [sic]. In January of 2009 the Spartanburg County Narcotics Division had two more different CRI's that came forward and stated that they had purchased 18 ounces of cocaine from "POO BEAR." They identified

---

[2] Referred to throughout the remainder of the affidavit as the "SCSO."

Alfonzo Thompson in a photo lineup as being the "POO BEAR" that they had dealt with. These two CRI's also confirmed that "POO BEAR" had an F–350 Ford Dually [sic] and it was Blue and Gold in color. On February 11, 2009 The [sic] Spartanburg County Narcotics Division arrested Jose Luis Diaz–Arroyo with a kilo of cocaine. During the interview with Arroyo he stated that his brother in law Alejandro Sosa Galvan was supplying a black male named "POO BEAR." Arroyo further stated that Sosa Galvan had multiple Kilos of cocaine delivered to "POO BEAR" at this River St. address on several different occasions. On July 30, 2009 a fifth CRI stated he was being supplied by a Deangelo Young aka "LITTLE MAN" and that Young was getting his cocaine from his cousin "POO BEAR." This CRI made a controlled buy from "LITTLE MAN" by taking him $4000 in Spartanburg County Sheriff's Office recorded funds. "LITTLE MAN" left the buy location and was followed to 1868 Tamara Way where he met with "POO BEAR" (THOMPSON). Thompson was driving a white in color Honda Civic Sc [sic] tag []. This Civic is registered to a Pamela D. Jones of 1868 Tamara Way. Pamela Jones is a known girlfriend of "POO BEAR." "LITTLE MAN" left "POO BEAR" and met with the CRI at the buy location where he turned over 4 ounces of Cocaine to him.

Over the past 6 months the Spartanburg County Sheriff's Office Narcotics Division has conducted surveillance on 120 River St. and on several occasions has seen Thompson driving different vehicles to include the Ford F–350 Dually [sic] blue and gold in color and the white in color Honda Civic to and from this location. Investigators have also seen the gray in color Honda Accord station wagon come and go from this residence.

Over the past 6 months Investigators have witnessed Thompson visit this 120 River St. address just before making cocaine deliveries throughout Spartanburg City.

On May 11, 2010 Investigators bought ½ ounce of cocaine base from Authur Jones. When Jones was approached he started cooperating with the SCSO Narcotics Division. Jones stated that he was buying his cocaine from Alfonzo Thompson aka "POO BEAR." Jones stated that "POO BEAR" was fronting him about 9 ounces of Powder [sic] Cocaine [sic] a month. Jones stated that he would take the powder and then turn it into cocaine base and then sell it. When it was all gone he would call "POO BEAR" and tell him that he was ready for him. Jones stated that he was paying $1000 an ounce for the cocaine. On 05-11-2010 Jones placed a recorded telephone call to Thompson stating that he was ready to re-up. Thompson agreed to come by. Jones stated that Thompson's M.O. was to come by in the next couple of days. On 05-12-2010 Jones called "POO BEAR" again with no response. At approximately 6:30 PM Jones received a telephone call from "POO BEAR" [] asking Jones if he was going to be home. Jones stated yes and hung up. Jones knew this to mean that "POO BEAR" was coming shortly. At Approximately [sic] 7:19 PM Thompson pulled into Jones [sic] driveway driving the white Honda Civic. Thompson exited the vehicle and came inside. Once inside Jones handed Thompson $9000.00 in recorded funds. Thompson stated that he would bring the package in the morning. Jones knew this to mean that Thompson would bring the cocaine to him the next day. Investigators were inside the residence watching the transaction take place as well as the transaction being Video [sic] and Audio [sic] recorded. There was [sic] also outside surveillance units near the scene. Thompson was loosely followed in the Honda Civic after the transaction.

This investigator feels that Thompson has demonstrated a pattern over the course of the last 2 years of large scale cocaine trafficking. It is believed that Items [sic] related to the Drug Trafficking Trade [sic] will be located inside this residence as well as Cocaine [sic] and or Cocaine

Base [sic]. It is also known by Investigators that Drug Traffickers [sic] hide their drugs and proceeds from drugs [sic] sales in various places about the residence and cartilage [sic] areas. Due to the violent Nature of Drug Trafficking Organizations [sic] a "NO KNOCK WARRANT IS REQUESTED."

The search warrant affidavit was presented to a circuit court judge as opposed to a magistrate. It appears there was no oral testimony provided supplementing the contents of the affidavit.[3] The circuit court judge issued the search warrant.

While the search warrant for 120 River Street was being executed, Thompson was arrested at his place of employment.[4] Simultaneously, law enforcement was conducting searches at Thompson's residence in Greenville County and his girlfriend's Spartanburg residence. The search of 120 River Street resulted in several bags of marijuana, several bags of cocaine, and several firearms being seized. No drugs were recovered at the other locations, only cash and firearms.[5] Thompson was charged with trafficking in cocaine, PWID marijuana, possession of a weapon during the commission of a violent crime, and possession of a stolen weapon.

A pretrial suppression hearing was held regarding the evidence recovered at 120 River Street. The trial judge denied Thompson's motion to suppress, finding that considering the facts and circumstances set forth in the affidavit, combined with "the reasonable inferences that might be derived from those facts as alleged," probable caused existed to issue the search warrant.

The Court of Appeals affirmed the trial judge's refusal to suppress the evidence

---

[3] At the suppression hearing, Thompson' attorney stated the judge who issued the search warrant informed him "there is no file on the search warrant" as it appeared to be missing. The issuing judge further informed Thompson's attorney he had no recollection of any sworn testimony supplementing the affidavit.

[4] The arrest warrant was issued for Thompson prior to the search of his parents' home, and was based on an incident not related to that address.

[5] Thompson does not challenge the search of his residence or his girlfriend's residence.

recovered from 120 River Street.  *See State v. Thompson*, 413 S.C. 590, 776 S.E.2d 413 (Ct. App. 2015).  We granted Thompson's petition for a writ of certiorari to review the decision of the Court of Appeals.

## ISSUE

Did the Court of Appeals err in finding the trial judge properly refused to suppress the evidence seized from the River Street address?

## ANALYSIS

Thompson contends the Court of Appeals erred in affirming the trial judge's refusal to suppress the evidence seized from his parents' home.  We agree.

In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, *but whether it is reasonable to believe that the items to be seized will be found in the place to be searched*.  *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) (emphasis supplied).  In South Carolina, the judicial officer asked to issue a search warrant must make a practical, common sense decision concerning whether, under the totality of the circumstances set forth in the affidavit, *there is a fair probability that evidence of a crime will be found in the particular place to be searched*.  *State v. Tench*, 353 S.C. 531, 534, 579 S.E.2d 314, 316 (2003) (emphasis supplied) (citing *State v. Weston*, 329 S.C. 287, 494 S.E.2d 801 (1997); *State v. Philpot*, 317 S.C. 458, 454 S.E.2d 905 (Ct. App. 1995)).  If no supplemental oral testimony is taken, an issuing judge's probable cause determination is limited to the four corners of the search warrant affidavit.  *State v. Kinloch*, 410 S.C. 612, 616, 767 S.E.2d 153, 155 (2014) (citation omitted).

The duty of the reviewing court is to ensure the issuing judge had a substantial basis for concluding probable cause existed.  *Kinloch*, 410 S.C. at 616, 767 S.E.2d at 155 (citation omitted).  Although great deference must be given to an issuing judge's conclusions, the judge may only issue a search warrant upon a finding of probable cause.  *State v. Jones*, 342 S.C. 121, 126, 536 S.E.2d 675, 678 (2000) (citing *State v. Bellamy*, 336 S.C. 140, 519 S.E.2d 347 (1999)).

The appellate courts of this state have routinely held that information contained in an affidavit providing a timely and direct nexus between the contraband sought and the location to be searched—e.g., *inter alia*, specific details of surveillance of a

suspect conducting a drug transaction immediately upon leaving a residence—is sufficient to support a search warrant. *See Kinloch*, 410 S.C. at 618, 767 S.E.2d at 156 (concluding probable cause existed to issue a search warrant based on "namely, the numerous tips indicating drug activity was probably present at 609 A and the subsequent surveillance of 609 A during which seemingly drug-related behavior was observed"); *State v. Gore*, 408 S.C. 237, 248, 758 S.E.2d 717, 722–23 (Ct. App. 2014) (cert. dismissed as improvidently granted) (finding surveillance of defendant leaving residence to sell drugs at another location provided a sufficient nexus to the residence to justify a search warrant); *cf. State v. Scott*, 303 S.C. 360, 362–63, 400 S.E.2d 784, 785–86 (Ct. App. 1991) (cert. denied) (upholding subsequent search warrant of defendant's home when affidavit stated officers had visual contact with defendant from time he left his residence until the time of the traffic stop and drugs were uncovered on defendant at stop).

However, in this case, only two pieces of information in the affidavit tie drug activity to 120 River Street: (1) a 2009 hearsay statement that cocaine was delivered there "on several different occasions"; and (2) the assertion that "in the six months preceding the affidavit, investigators 'witnessed Thompson visit this 120 River Street address just before making cocaine deliveries throughout Spartanburg.'" We find neither statement, independently or together, demonstrates a sufficiently specific indication that the drugs Thompson was selling were being accessed at that address on or near May 2010. *See Zurcher*, 436 U.S. at 556 ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought"); *Tench*, 353 S.C. at 534, 579 S.E.2d at 316 (citations omitted) (finding a search warrant is valid if the affidavit supporting it shows a fair probability the contraband sought will be found in the location to be searched).

More to the point, the assertions in the affidavit in this case contain no specific facts showing any connection between drug-related activity and 120 River Street after February 2009. *See Tench*, 353 S.C. at 534, 579 S.E.2d at 316; *Kinloch*, 410 S.C. at 616, 767 S.E.2d at 155. And we find the non-specific statement in the affidavit—that in the past six months law enforcement observed Thompson stop at 120 River Street "just before making cocaine deliveries throughout Spartanburg County"—is insufficiently specific to provide a fair probability the evidence sought by the search warrant would be located there.

Accordingly, we find the Court of Appeals erred in holding the trial judge properly

denied the motion to suppress the evidence recovered from 120 River Street. *See State v. Khingratsaiphon*, 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002) ("The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Evidence seized in violation of the Fourth Amendment must be excluded from trial" (citing *Mapp v. Ohio*, 367 U.S. 643 (1961))).

## CONCLUSION

We reverse the Court of Appeals' decision, which affirmed the trial judge's denial of the motion to suppress the evidence located at 120 River Street.

**REVERSED.**

**BEATTY, C.J., HEARN, J., and Acting Justices James E. Moore and William P. Keesley concur.**