**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Antonio Denon Brayboy, Appellant.

Appellate Case No. 2023-001182

_____

Appeal from Florence County
H. Steven DeBerry, IV, Circuit Court Judge

_____

Unpublished Opinion No. 2026-UP-166
Submitted February 18, 2026 – Filed April 1, 2026

_____

**AFFIRMED**

_____

Ralph James Wilson, Jr. and Lauren Kay Anderson, both of Ralph Wilson Law PC, of Conway, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, and Senior Assistant Deputy Attorney General Melody Jane Brown, all of Columbia, and Solicitor Edgar Lewis Clements, III, of Florence, for Respondent.

_____

**PER CURIAM:** Appellant Antonio Denon Brayboy appeals his convictions and sentences, arguing the trial court erred by (1) finding there was probable cause to issue a search warrant for Brayboy's phone records and cell site location information (CSLI) and (2) denying his motion for a directed verdict when there was no evidence to support the alleged confession or malice.[1] We affirm.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of December 29, 2019, police discovered Rashad Jones (victim)'s body in a car parked at an athletic park in Florence. Victim had been shot in the head and his pants zipper was down. Police found a condom and condom wrapper outside the vehicle and an unopened condom and a container of Vaseline in the vehicle. Detective Alex Edwards was one of the responding officers and was aware that the athletic park was an area that police were frequently called to for suspicious activity and sexual activity.

Police obtained a search warrant for victim's cell phone records which revealed that there were several phone calls and texts between victim's phone and a 704 number in the hours leading up to victim's death, including a brief phone call shortly before victim's death. Detective Edwards spoke with victim's friend and co-worker Allen Thomas who informed him that victim previously had met female sex workers at the athletic park where victim's body was found.

Based on this information, Detective Edwards contacted Investigator Angel Clark with the Florence County Sheriff's Office; Investigator Clark specialized in

---

[1] Brayboy also argues that the trial court erred by admitting evidence from third-party search databases and websites without proper authentication. Brayboy offers no legal authority to support this argument. As the appellant, Brayboy has the burden of providing arguments, legal authority, and a record on which this court may issue its opinion. Rule 208(b)(1)(E), SCACR (providing that a brief must include citations of authority); *Duckett by Duckett v. Payne*, 279 S.C. 94, 96, 302 S.E.2d 342, 343 (1983) ("[T]he appellant carries the burden of convincing this [c]ourt that the trial court erred."). Brayboy has not met that burden here. Accordingly, we cannot reach the merits of this issue. *Equivest Fin., LLC v. Ravenel*, 422 S.C. 499, 506, 812 S.E.2d 438, 441 (Ct. App. 2018) ("When a party provides no legal authority regarding a particular argument, the argument is abandoned and the court will not address the merits of the issue.").

sex crimes. Investigator Clark entered the 704 number into Spotlight.[2] That search produced an advertisement on a commercial sex work website for a male sex worker seeking female clients. The location of the sex worker was listed as Florence and the advertisement had been posted on December 19, 2019.

On January 13, Investigator Edwards sought a search warrant for the 704 number's subscriber information, phone records, and CSLI over a seventeen-day period. The magistrate signed the search warrant the same day. The affidavit for the search warrant provided the following:

> On December 29, 2019, around 1:30 a.m., the Florence County Sheriff's Office responded to 2711 Pamplico Highway, Florence, S.C.[,] also known as Greenwood Athletic Park[,] located within the jurisdiction of Florence County concerning a suspicious vehicle complaint. Deputies responded to make contact with the vehicle[,] one 2003 GMC Yukon (SC Tag NPK425)[,] concerning this incident. Deputies observed a black male individual in the driver seat [who] appeared to be sleeping. Upon approach[,] deputies discovered the male individual was unresponsive and bleeding from the left side of his head area[,] prompting them to call for EMS. The Florence County Coroner's Office was notified along with investigators with the Sheriff's Office to respond to the scene. Upon further investigation[,] it appeared the male victim sustained a gun[]shot wound to his head area. Investigators were able to identify the deceased victim, [Rashad] Maurice Jones, of Mullins, South Carolina. During the course of the investigation [] Mr. Jones'[s] personal cell phone made contact with [the 704 number] several times around the time of his death. Investigators have reason to believe the subscriber information along

---

[2] Spotlight is a search database created by a private company that searches eight to nine different commercial websites on which sex workers advertise their services. The searcher can use a variety of information to search the database like phone numbers, email addresses, and photos. This tool is available only to current law enforcement officers that work in the field of exploitation and trafficking. Officers wishing to gain access must undergo a vetting process.

with the cell phone records contain vital information to assist with this ongoing investigation.

At a pretrial hearing, Investigator Edwards testified he supplemented the affidavit by orally testifying to the following: (1) victim was murdered; (2) based on his years of experience as an investigator, the condoms, Vaseline container, and unzipped pants indicated the murder was sexual in nature; (3) as he learned from his conversations with Thomas (victim's friend and co-worker), victim previously had met female sex workers at the athletic park; (4) a Spotlight search of the 704 number produced the advertisement[3]; and (5) victim's phone frequently had contact with the 704 number in the hours leading up to victim's death, including a phone call shortly before victim's time of death. Investigator Edwards conceded on cross-examination he had no prior dealings with Thomas and did not know whether he was a truthful person—meaning he was unable to testify to the magistrate about Thomas's reliability.

The subscriber information for the 704 number revealed the number was assigned to Brayboy. The CSLI from victim and Brayboy's phones showed the phones converging together at the time of victim's death near the crime scene. Shortly after the victim's time of death, both phones were carried away from the murder scene toward Lake City where Brayboy lived until victim's phone lost contact with the cell phone towers and Brayboy's phone continued on to Lake City. At that time, the police did not seek to arrest Brayboy or question him.

Several months later, Asia Cooper, Brayboy's ex-girlfriend, contacted police, alleging she had information about victim's murder. Cooper alleged Brayboy told her that he was responsible for victim's death. Cooper told police that Brayboy informed her that victim contacted him on an escort website and victim initially pretended to be a woman. Brayboy told Cooper that victim revealed shortly after their initial contact that he was a man and Brayboy agreed to meet up with victim that night. According to Cooper, Brayboy had an extreme hatred of gay men. Cooper stated that Brayboy told her that he met victim at an athletic park, got into victim's car, shot victim in the head, and took victim's phone and the shell casing.

---

[3] Brayboy questioned Investigator Edwards at the pretrial hearing about his case notes, which appeared to indicate the advertisement was not discovered until after the search warrant was issued. Investigator Edwards repeatedly testified that before the search warrant was issued, he knew of the advertisement and the 704 number's association with the advertisement and he had testified before the magistrate about the advertisement.

Brayboy told her he disposed of the phone by throwing it out of the window of the car he was driving. Cooper further informed police that Brayboy had access to guns and identified the 704 number as Brayboy's.

Brayboy's trial occurred in July 2023 with Cooper, Detective Edwards, Investigator Clark, and Thomas, among others, all testifying on behalf of the State. A jury convicted Brayboy of murder and possession of a weapon during a violent crime. Brayboy was sentenced to fifty years' imprisonment for murder and five years' imprisonment for possession of a weapon during a violent crime, set to run consecutively.

## LAW AND ANALYSIS

### I. Probable Cause

Brayboy asserts the trial court erred by denying his motion to suppress the CSLI, subscriber information, and phone records because the affidavit for the search warrant related to the 704 number failed to provide probable cause. We disagree.

"[S]earch warrants may be issued 'only upon affidavit sworn to before the magistrate . . . establishing the grounds for the warrant.'" *State v. Bellamy*, 336 S.C. 140, 143, 519 S.E.2d 347, 348 (1999) (quoting S.C. Code Ann. § 17-13-140 (2014)). "Oral testimony may also be used in this state to supplement search warrant affidavits which are facially insufficient to establish probable cause." *State v. Jones*, 342 S.C. 121, 128, 536 S.E.2d 675, 678–79 (2000).

"In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, *but whether it is reasonable to believe that the items to be seized will be found in the place to be searched*." *State v. Thompson*, 419 S.C. 250, 256, 797 S.E.2d 716, 719 (2017). "In South Carolina, the judicial officer asked to issue a search warrant must make a practical, common sense decision concerning whether, under the totality of the circumstances set forth in the affidavit, *there is a fair probability that evidence of a crime will be found in the particular place to be searched*." *Id.* at 256–57, 797 S.E.2d at 719.

We hold the trial court did not err by denying the motion to suppress because the affidavit, taken together with Investigator Edwards's oral testimony, established

sufficient probable cause that evidence of the crime would be found in the CSLI.[4] *Jones*, 342 S.C. at 128, 536 S.E.2d at 678–79 ("Oral testimony may also be used in this state to supplement search warrant affidavits which are facially insufficient to establish probable cause."). The affidavit taken with Investigator Edwards's testimony provided that calls occurred between victim's phone and the 704 number close in time to victim's death, the 704 number was associated with a sex worker's advertisement, victim has previously used the park as a site to meet sex workers, and the murder appeared sexual in nature. All these factors together rise to a fair probability that evidence of victim's murder could be found in the CSLI. *Thompson*, 419 S.C. at 256–57, 797 S.E.2d at 719 ("In South Carolina, the judicial officer asked to issue a search warrant must make a practical, common sense decision concerning whether, under the totality of the circumstances set forth in the affidavit, *there is a fair probability that evidence of a crime will be found in the particular place to be searched*.").

## II.    Directed Verdict Motion

Brayboy argues the trial court erred by denying his motion for a directed verdict because Cooper's testimony was uncorroborated and corpus delicti requires evidence independent of the extrajudicial confession. Brayboy also argues the only evidence of malice was Cooper's uncorroborated testimony that Brayboy hated gay men, which he argues was insufficient. Brayboy highlights that the State failed to produce any evidence that victim was gay. We disagree.

Brayboy misunderstands the requirement that the State produce independent "proof . . . of the corpus delicti [in a homicide] aside from the extrajudicial confession of the defendant." *State v. Owens*, 293 S.C. 161, 167, 359 S.E.2d 275, 278 (1987). "In a homicide case the corpus delicti consists of two elements: death of a human being, and the criminal act of another causing death." *State v. Speights*, 263 S.C. 127, 131, 208 S.E.2d 43, 45 (1974). Evidence showing the accused in a homicide case is the perpetrator is not an element of corpus delicti the State must

---

[4] Subscriber information and call records are not protected by the Fourth Amendment and were admissible regardless of the affidavit's sufficiency. *See Kyllo v. United States*, 533 U.S. 27, 33 (2001) ("[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."); *Smith v. Maryland*, 442 U.S. 735, 745–46 (1979) (holding there is no actual expectation of privacy in the phone numbers dialed); *United States v. Clenney*, 631 F.3d 658, 666 (4th Cir. 2011) ("Phone customers have no constitutionally cognizable privacy interests in basic subscriber information.").

prove. *City of Easley v. Portman*, 327 S.C. 593, 596, 490 S.E.2d 613, 615 (Ct. App. 1997) ("Independent proof of the defendant's identity as the guilty party is not required to prove the *corpus delicti*."). All the first element requires is that the State prove that a person died. That is uncontested in this case. The second element requires that the State provide sufficient independent proof that there was a criminal act causing the person's death. The State provided evidence that victim was shot in his car, there was no gun or shell casings in the car, and victim's phone and money were taken from the scene. The evidence was sufficient to prove that someone, other than victim, shot victim without lawful cause and that the gun shot caused the victim's death.

As to malice, "[i]n the context of murder, malice does not require ill-will toward the individual injured, but rather it signifies 'a general malignant recklessness of the lives and safety of others, or a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief.'" *In re Tracy B.*, 391 S.C. 51, 69, 704 S.E.2d 71, 80 (Ct. App. 2010) (quoting *State v. Mouzon*, 231 S.C. 655, 662, 99 S.E.2d 672, 675–76 (1957)). There was evidence presented at trial that Brayboy met with victim, brought a gun, and shot victim in the head. This kind of evidence suggests a wrongful intent to injure another. *State v. Cain*, 419 S.C. 24, 33, 795 S.E.2d 846, 851 (2017) ("[Appellate courts] review the denial of a directed verdict motion in a criminal case under the any evidence standard of review."); *State v. Kelsey*, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998) ("'Malice' is the wrongful intent to injure another and indicates a wicked or depraved spirit intent on doing wrong."). Whether Brayboy sought to kill victim because he deeply hated gay men and whether victim was gay are related to motive, not malice. *State v. Smith*, 307 S.C. 376, 385, 415 S.E.2d 409, 414 (Ct. App. 1992) ("[M]otive is not an element of murder and, therefore, the State need not prove motive.").

Accordingly, we hold the trial court did not err by denying Brayboy's motion for a directed verdict because the State provided proof of corpus delicti for homicide and evidence of malice was presented.

For the reasons discussed above, Brayboy's convictions and sentences are

**AFFIRMED.**[5]

**GEATHERS, HEWITT, and CURTIS, JJ., concur.**

---

[5] We decide this case without oral argument pursuant to Rule 215, SCACR.